UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK WAYNE KENNEDY,                                  16-CV-725-MJR
                                                     DECISION AND ORDER
                Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12).

Plaintiff Mark Wayne Kennedy brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying him Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Kennedy's motion (Dkt. No. 9) is denied and the Commissioner's motion (Dkt. No. 10) is granted.

## **BACKGROUND**

On March 14, 2013, Kennedy filed an application for DIB alleging disability since September 7, 2011, due to hip and back problems resulting from falling down the stairs. (*See* Tr. 58-59, 96, 165-66, 186).[2] Kennedy later amended his alleged onset date to May 17, 2012. (Tr. 44). Born in 1962, Kennedy was fifty years old at the time of his application.

---

[1]      The Clerk of Court is directed to amend the caption accordingly.
[2]      References to "Tr." are to the administrative record in this case.

(Tr. 47). Before filing his application, Kennedy worked as a tow motor operator for a recycling company. (Tr. 51-53). Kennedy's DIB application was denied on July 29, 2013 (Tr. 89-102), after which he requested a hearing before an Administrative Law Judge (Tr. 106-07). On December 17, 2014, Kennedy, represented by counsel, appeared before Administrative Law Judge Connor O'Brien (the "ALJ") for a hearing. (Tr. 41-88). On May 28, 2015, the ALJ issued her decision denying Kennedy's DIB claim. (Tr. 25-40). Kennedy requested review by the Appeals Council (Tr. 22-23), but on July 13, 2016, the Appeals Council denied Kennedy's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4). This action followed.

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ first found that Kennedy is insured for DIB through June 30, 2016. (Tr. 30). The ALJ then followed the required five-step analysis for evaluating Kennedy's DIB claim. Under step one, the ALJ found that Kennedy has not engaged in substantial gainful activity since May 17, 2012, his amended alleged onset date. (*Id.*). At step two, the ALJ concluded that Kennedy has the following severe impairments: "degenerative changes of the lumbar spine and the left hip." (*Id.*). At step three, the ALJ found that Kennedy does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before proceeding to step four, the ALJ assessed Kennedy's RFC as follows:

> The claimant has the residual functional capacity to perform light work as defined in [20 C.F.R. §404.1567(b)][3] except he: can frequently crouch and occasionally stoop, balance on slippery on [sic] moving surfaces, climb, kneel, and crawl; requires a sit/stand option that allows him to change position every 60 minutes for up to five minutes without leaving the work station; and can tolerate occasional exposure to extreme cold, wetness, humidity, vibrations, and hazards, such as open water or unprotected heights.

(Tr. 31). Proceeding to step four, the ALJ found that Kennedy is unable to perform any of his past relevant work as a maintenance machine repairer, construction worker, industrial-truck operator, machine driller, or hand packager. (Tr. 35-36). At the fifth step, the ALJ considered Kennedy's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that Kennedy can perform jobs that exist in significant

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §404.1567(b).

numbers in the national economy, such as battery tester, gate guard, and ticket taker. (Tr. 36-37). Accordingly, the ALJ found that Kennedy can successfully adjust to other work and, therefore, that he has not been under a disability within the meaning of the Act from his amended alleged onset date of May 17, 2012 through the date of her decision. (Tr. 36-37).

IV.     *Kennedy's Challenge*

Kennedy argues that the ALJ erred in not fully crediting his statements concerning the intensity, persistence, and limiting effects of his pain. (*See* Dkt. No. 9-1 (Kennedy's Memo. of Law)).

It is well settled that it is the role of the ALJ, not the Court, to appraise the credibility of witnesses, including the claimant. See *Carroll*, 705 F.2d at 642. "The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged." *Fisk v. Colvin*, No. 14-CV-931S, 2017 WL 1159730, at *5 (W.D.N.Y. Mar. 29, 2017). The Commissioner has set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged by the claimant. Second, if the ALJ finds that the claimant is so impaired, she must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility by assessing the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain

or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain or other symptoms; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. *See* 20 C.F.R. §404.1529; Social Security Ruling ("SSR") 96-7P, 1996 WL 374186 (July 2, 1996); SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017).

Here, at the first step of the credibility analysis, the ALJ found that Kennedy's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, but at the second step, the ALJ found Kennedy's statements concerning the intensity, persistence, and limiting effects of his symptoms to be "not entirely credible" because "the objective medical findings and the overall evidence simply do not substantiate the extensive degree of reduced functioning alleged by [Kennedy]." (Tr. 31-35). Contrary to Kennedy's argument, the ALJ's decision to discount his credibility complied with the applicable regulation and is supported by substantial evidence.

First, the ALJ's conclusion that the objective medical evidence does not fully support Kennedy's statements about his pain is supported by substantial evidence, including the "modest" imaging results (x-rays, a CT scan of the lumbar spine, and an MRI of the lumbar spine) in the record. (Tr. 35). Kennedy's argument that these imaging results show more than "modest" problems overlooks that one of his doctors, Dr. Webster Pilcher, used that exact word in describing the results of the MRI and opined that neither the MRI nor CT scan warranted surgical intervention. (Tr. 33-34 *referring* to Tr. 303-04).

Similarly, another doctor, Dr. John Orsini, noted that Kennedy's reported pain "seems well out of proportion to any objective findings with regard [to the] spinal MRI." (Tr. 34 *referring to* Tr. 321).

Second, having found Kennedy's statements about his pain to be in conflict with the objective medical evidence, the ALJ appropriately assessed the credibility of Kennedy's statements using the factors set forth in 20 C.F.R. §404.1529(c)(3). The ALJ addressed, for instance, the location, duration, frequency, and intensity of Kennedy's pain and what precipitates and aggravates his pain. 20 C.F.R. §404.1529(c)(3)(ii), (iii). The ALJ noted, in particular, that Kennedy has experienced left hip and lower back pain since September 2011, when he fell down the stairs. (Tr. 32). The pain, which Kennedy described as stabbing, numbing pain in his lower back and left hip, traveling down his left leg, is aggravated by any movement, including climbing stairs, and becomes worse with humidity and rain. (Tr. 31-32). The ALJ accounted for Kennedy's pain and these precipitating and aggravating factors by limiting him to a range of light work with certain postural and environmental restrictions. (Tr. 31).

The ALJ also appropriately addressed Kennedy's medications and other measures he uses to relieve his pain. 20 C.F.R. §404.1529(c)(3)(iv), (vi). The ALJ noted, for example, that when Kennedy visited his treating provider in March 2013, he was prescribed muscle relaxers and pain medication. (Tr. 32). However, at his next appointment in May 2013, Dr. Debra Alspector recommended against prescribing controlled medications based upon her belief that Kennedy exaggerated his pain. (*Id.*). Dr. Alspector instead prescribed Gabapentin, but Gabapentin ended up making Kennedy nauseous, so it was discontinued and replaced with lidocaine ointment and Tramadol.

(*Id.*).  Dr. Alspector ended up prescribing Lyrica and Hydrocodone to Kennedy in October 2013, but Kennedy reported taking medications "only when he absolutely needs them." (Tr. 33 *referring to* Tr. 244).  He likewise testified that he quit taking pain medication because it made him feel like he "was having a heart attack."  (Tr. 72).  The ALJ also noted that Kennedy utilized measures other than medication to help relieve his pain, such as applying heat to his back. (Tr. 32, 35).  The Court agrees with the ALJ that Kennedy's "fairly conservative[ ]" treatment of his pain, as described above, cuts against his statements of totally disabling pain.  (Tr. 35).

The ALJ also addressed in detail the treatment Kennedy received for his back and hip pain.  *See* 20 C.F.R. §404.1529(c)(3)(v).  The ALJ noted that although Kennedy reported injuring his back and hip in September 2011, he did not begin receiving regular treatment for those injuries until March 2013 (Tr. 32), and two specialists who examined him a year later, Dr. Pilcher and Dr. Orsini, did not recommend surgery (Tr. 35). Additionally, the ALJ correctly noted that physicians who treated or examined Kennedy found that he embellished his pain.  (Tr. 32, 34-35).[4]  As the ALJ concluded, although Kennedy suffers from impairments that interfere with his ability to perform more than a range of light work, the treatment records and other evidence in the record simply do not support his complaints of total disability.  (Tr. 31-32).  Consequently, for these reasons, the ALJ's decision to discount Kennedy's statements concerning the intensity,

---

[4] Although the ALJ did not specifically discuss all of Kennedy's daily activities in her decision, she was certainly aware of them given her citation to Kennedy's function report. (Tr. 31). Moreover, an ALJ is not required to explicitly discuss each and every credibility factor in her decision. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order); *see also Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (stating that ALJ is not required to discuss every piece of evidence in the record).

persistence, and limiting effects of his pain is supported by substantial evidence, and Kennedy's lone objection to the ALJ's decision is thus without merit.

## **CONCLUSION**

For the foregoing reasons, Kennedy's motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: August 17, 2018
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge